IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | | |
|---|---|---|---|
| IN RE: | § | CASE NO. | 21-50946-CAG |
| ALAMO CITY MOTORPLEX, LLC, | § | | |
| DEBTOR(S) | § | CHAPTER | 11 |

## ALAMO CITY MOTORPLEX, LLC'S DISCLOSURE STATEMENT COVERSHEET

1

**INDEX**

1.   Introduction.. . . . . . . . . . . . . . . . . . . 4
      A.   Identity of Debtor for purposes of Plan of Reorganization. . . . . . . . . . . . . . . . . 4
      B.   Sophisticated Nature of Most Creditors and this Disclosure Statement. . . . . . . . . . . . 4
      C.   Important Plan Definitions/Explanations.. . . . . . . 5
      D.   Nature and Purpose of this Disclosure Statement ("Disclosure Statement") . . . . . . . . . . . 5
      E.   Nature of Chapter 11 of Title 11 of U.S.C.. . . . . 8
      F.   Process of Confirmation.. . . . . . . . . . . . . 8
1.The Hearing.. . . . . . . . . . . . . . . . . . . . 8
2.   Requirements.. . . . . . . . . . . . . . . . . . 8
3.   Cramdown.. . . . . . . . . . . . . . . . . . . . 10
      G.   Voting Procedures and Requirements. . . . . . . . 11
1.   Ballots and Voting Deadlines.. . . . . . . . . . . . 11
2.   Creditors Entitled to Vote.. . . . . . . . . . . . . 12
3.   Definition of Impairment. . . . . . . . . . . . . . 14
4.   Classes Impaired Under the Debtor's Plan.. . . . . . . 14
2.   Representations. . . . . . . . . . . . . . . . . . 14
      A.   Disclaimers.. . . . . . . . . . . . . . . . . . 13
3.   Background Information on Debtor and the Plan and the Nature and History of the Debtor.. . . . . . . . . . . . 15
      A.   Financial History and Background of the Debtor. . . 15
      B    Operations in Chapter 11. . . . . . . . . . . . . 15
      C.   Future Income and Expenses Under the Plan.. . . . . 16
      D.   Anticipated Future of Debtor. . . . . . . . . . . 16
      E.   Accounting Method and Source of Financial Information 17
4.   Analysis and Valuation of Property.. . . . . . . . . . 18
      A.   Schedule of Assets and Market Value.. . . . . . . . 18
      B.   Liquidation Analysis. . . . . . . . . . . . . . 18
5.   Summary of Plan of Reorganization. . . . . . . . . . 19
      A.Summary of Classes and Estimation of Administrative Claims and Scheduled Claims. . . . . . . . . . . . . . . . . . 19
Class 1.. . . . . . . . . . . . . . . . . . . . . . 19
Class 2.. . . . . . . . . . . . . . . . . . . . . . 19
      B.Provision for Treatment of Classes of Creditors. . . . 21
Class 1.. . . . . . . . . . . . . . . . . . . . . . 22
Class 2.. . . . . . . . . . . . . . . . . . . . . . 22
Operation of the Plan.. . . . . . . . . . . . . . . . 25
1.   Feasibility of the Plan. . . . . . . . . . . . . . . 25
2.   Retention of Jurisdiction. . . . . . . . . . . . . . 26
3.   Modification of Plan.. . . . . . . . . . . . . . . . 29
4.General Information about the Claims Procedure and Procedures for Resolving Contested Claims. . . . . . . . . . . . . 29
5.   Debtor's Retention of Interest.. . . . . . . . . . . . 31

6.    Alternatives to the Plan.. . . . . . . . . . . . . . .  31
7.    Risks to Creditors Under Plan. . . . . . . . . . . . .  32
8.    Certain Federal Income Tax Consequences of the Plan. . .  33
      A.    Federal Income Tax Consequences to Creditors. . . .  34
9.Pending Litigation, Actions Pertaining to Fraudulent Transfers,
      Voidable Preferences and Equitable Subordination. . . . .  36
10.   Summary of Significant Orders Entered During the Case. .  37

Conclusion. . . . . . . . . . . . . . . . . . . . . . . .  37

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | | |
|---|---|---|---|
| IN RE: | § | CASE NO. | 21-50946-CAG |
| ALAMO CITY MOTORPLEX, LLC, | § | | |
| DEBTOR(S) | § | CHAPTER | 11 |

## ALAMO CITY MOTORPLEX, LLC'S DISCLOSURE STATEMENT

I.

### INTRODUCTION

A.  Identity of Debtor for the Purposes of the Plan of Reorganization

On July 30, 2021, a Voluntary Petition was filed by the Debtor, ("Debtor"), pursuant to Chapter 11 of Title 11 of the United States Code (the "Code") with the United States Bankruptcy Court for the Western District of Texas, San Antonio Division. Debtor is principally engaged the business of leasing real property that is used as a automobile racing drag way. An Order for Relief was entered on the date of the original filing of the Chapter 11 proceeding.  All Creditors with claims against Debtor will receive distributions from the Debtor's operation and the Debtor's estate.  All post confirmation business involving the Debtor will be conducted by the Debtor.

B.  Sophisticated Nature of Most Creditors and this Disclosure Statement.

The Debtor's Plan of Reorganization ("Plan") deals with the payment of debt held by sophisticated Creditors and parties-in-

interest, and for that reason, the Debtor considers the Creditors as sophisticated investors and have included information concerning operations, values and other analyses intended to furnish financial and legal information which should be reviewed only after each Creditor has complete understanding of the Plan.

C. <u>Important Plan Definitions/Explanations.</u>

The Plan contains numerous definitions found in the first section of the Plan. These terms are generally capitalized to indicate that they are defined terms. Such definitions include explanations which are enforceable as the terms of the Plan. Reference should be made to the definition section. Several of these definitions are explained throughout this Statement; however, such explanation is not intended as a substitute for a full and complete reading and understanding of the definitions. Emphasis is placed on these definitions and they are an integral part of the Plan.

D. <u>Nature and Purpose of this Disclosure Statement ("Disclosure Statement")</u>

Pursuant to §1125 of the Code, the Debtor seeks an Order from the Bankruptcy Court for the Western District of Texas, San Antonio Division, The Honorable Craig A. Gargotta presiding, (the "Court") approving this Disclosure Statement for submission to the holders of claims against, or interest in, the Debtor. The purpose of this Disclosure Statement is to provide such

5

information as the Bankruptcy Court deems material and necessary for the creditors, investors and other parties in interest to make a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Debtor's Plan of Reorganization (the "Plan"). The Plan has been filed commensurate with the filing of this Disclosure Statement.

Pursuant to the terms of the Code, this Disclosure Statement has been presented to you, subject to approval and hearing as to any objections by the Bankruptcy Court. Such approval is that required of the Bankruptcy Court by the Code and that this statement contains adequate information. Such approval does not constitute a judgment by the Court as to the desirability of the Plan or as to the value of any consideration offered hereby. Interested parties are referred to 11 U.S.C. §1125 which reads, in part:

". . . (b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the Debtor or an appraisal of the Debtor's assets . . ."

"(d) Whether a disclosure statement . . . contains adequate information is not governed by any otherwise applicable non-bankruptcy law, rule, or regulation, but an agency or official whose duty is to administer or enforce such a law, rule, or regulation may be heard on the issue of whether a disclosure statement contains adequate information.  Such an agency or official may not appeal from an order approving a disclosure statement . . ."

"(e) A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a security, offered or sold under the plan, of the Debtor, of an affiliate participating in a joint plan with the Debtor, or of a newly organized successor to the Debtor under the plan, is not liable, on account of such solicitation of participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a Plan or the offer, issuance, sale, or purchase of securities."

E.  <u>Nature of Chapter 11 of Title 11 of U.S.C.</u>

Chapter 11 of the Bankruptcy Code was designed by Congress to allow a financially troubled Debtor to attempt to reorganize

and restructure his, her or its debts. Chapter 11 contemplates allowing the Debtor or his creditors or other parties to prepare a Plan of Reorganization which provides for the Debtor's payment of all or part of his debts over a specified time period. After the Plan is filed and the Disclosure Statement is approved, the creditors and equity holders, if any, are given an opportunity to accept or reject the Plan. If the requisite number of creditors approve the Plan and/or the Court deems the Plan to be confirmable pursuant to §1129 of the Code, then the reorganized Debtor pays all or a portion of his, her, or its debts pursuant to the terms of the Plan.

     F.   <u>Process of Confirmation</u>

     1.   <u>The Hearing.</u>

The Bankruptcy Court has not set a court date for a hearing on the Plan.

     2.   <u>Requirements of Plan Confirmation.</u>

A creditor, or interest holder, in order to vote, must have filed a proof of claim or interest by November 29, 2021, for all creditors except a governmental unit, unless scheduled by the Debtor as not disputed, liquidated and/or not contingent. Any creditor whose claim is not scheduled as disputed, liquidated or contingent, is, to the extent scheduled, deemed to have filed a claim, and, absent objection, such claim is deemed allowed. However, absent an affirmative act constituting a vote accepting

8

or rejecting the Plan, such creditor and such creditor's claim will not be included in the tally. (Allowance or disallowance of the claim for voting purposes does not necessarily mean that all or a portion of the claim will not be allowed or disallowed for distribution purposes).

If a creditor or interest holder is eligible to vote, he may vote to accept the Plan by filling out and mailing the ballot which the Debtor has provided him as instructed. A creditor or interest holder may also vote in person at the hearing on acceptance. Whether the creditor or interest holder votes on the Plan or not, such person will be bound by the terms and treatment set forth in the Plan if the Plan is confirmed by the Court.

In order for the Plan to be accepted by creditors, a majority in number and a two-thirds majority in amount of claims filed and allowed and actually voting of each impaired class of creditors must vote to accept the Plan. In order for the Plan to be accepted by interest holders, a two-thirds majority in amount of interest allowed (for voting purposes) and voting of each impaired class of interests must vote to accept the Plan.

Upon your receipt of the Court approved Disclosure Statement and a copy of the Plan attached hereto, you are urged to fill in, date, sign and promptly mail the enclosed ballot which the Debtor

9

is furnishing to you.  <u>PLEASE BE SURE TO PROPERLY COMPLETE THE BALLOT AND IDENTIFY THE NAME OF THE CLAIMANT.</u>

The Debtor or others may solicit your vote.  The cost of any solicitation by Debtor will be borne by the Debtor.  No representative of the Debtor shall receive any additional compensation for any solicitation.

3.  <u>Cramdown.</u>

If the Plan is rejected by one or more impaired classes of claims or interests held by Debtor's creditors, the Plan or a modification thereof may still be confirmed by the Court if the Court determines, among other federal requirements, that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class or classes of claims or interests impaired by the Plan.  The Debtor, as the Plan proponent, may, and intends to, request such a determination (commonly referred to as a "cram down") if the Plan or modification thereof is not accepted by all of the impaired classes of claims or interests held by creditors or investors.

G.  <u>Voting Procedures and Requirements</u>

1.  <u>Ballots and Voting Deadline</u>

In addition to this Disclosure Statement and a copy of the Plan, each creditor entitled to vote will hereafter be provided with a ballot to be used for voting to accept or reject the Plan, together with a postage paid return envelope.

10

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Bankruptcy Court prior to the hearing before the Bankruptcy Court requiring his approval of the Plan or at such other time as the Bankruptcy Court may set. The time and date of the hearing will be set forth in a notice to the creditors.

Whether or not the creditor entitled to vote expects to be present at the hearing, each creditor is urged to complete, date, sign and properly mail the ballot to the Debtor's counsel at the following address:

James S. Wilkins
JAMES S. WILKINS, P.C.
1100 NW Loop 410, Suite 700
San Antonio, Texas 78213
Phone:(210) 271-9212

For purposes of this Plan, a creditor who fails to vote is deemed to have entered a neutral vote on the Plan.

2. <u>Creditors Entitled to Vote</u>

Any creditor whose Claim is impaired under the Plan is entitled to vote, if either (I) its claim has been scheduled by the Debtor (and such claim is not scheduled as disputed, contingent or unliquidated) in the Debtor's original schedules filed on or about August 11, 2021 or in any subsequent amendment of schedules, or (ii) it has filed a proof of claim on or before November 29, 2021, for all creditors (except a governmental

11

unit), set by the Bankruptcy Court for such filings. Any claim as to which an objection has been filed or has been disputed (and such objection is still pending or the disputed claim has not been resolved) is not entitled to vote, unless the Bankruptcy Court temporarily allowed the claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon application by the creditor. Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Bankruptcy Court. A creditor's vote may be disregarded if the Bankruptcy Court determines that the creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

   3.   <u>Definition of Impairment</u>

   Under Section 1124 of the Bankruptcy Code, a class of claims or Equity Security Interests is impaired under a Chapter 11 plan unless, with respect to each claim or interest of such class, the Plan:

   1.   Leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or Equity Security interest; or

   2.   Notwithstanding any contractual provision or applicable law that entitles the holder of a claim or Equity Security interests to receive accelerated payment of his claim or Equity Security interests after the occurrence of a default;

       a.   Cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that

consists of a breach of any provision relating to the insolvency or financial condition of the Debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code;

b.  Reinstates the maturity of such claim or Equity Security interest as it existed before the default;

c.  Compensates the holder of such claim or Equity Security Interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

d.  Does not otherwise alter the legal, equitable, or contractual rights to which such claim or Equity Security Interest entitles the holder of such claim or Equity Security Interest; or

3.  Provides that, on the Plan effective date, the holder of such claim or Equity Security Interest receives, on account of such claim or Equity Security Interest, cash equal to:

a.  With respect to a claim, the allowed amount of such claim; or

b.  With respect to an Equity Security Interest, if applicable, the greater of:

(i)  Any applicable fixed liquidation preference;

or

(ii) Any fixed price at which the Debtor, under the terms of the security, may redeem the security.

4.  <u>Classes Impaired Under the Debtor's Plan</u>

The following classes of claim are impaired under the Plan, and creditors holding claims in such classes are entitled to vote to accept or reject the Plan: None are impaired.

## II.

### REPRESENTATIONS

A. <u>Disclaimers</u>

1. NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE PLANS OF REORGANIZATION ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE BY ANY PERSON TO SECURE YOUR VOTE WHICH ARE OTHER THAN HEREIN CONTAINED SHOULD NOT BE RELIED UPON AND SUCH REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT.

2. THE COURT'S APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF ANY OF THE REPRESENTATIONS CONTAINED IN EITHER THE DISCLOSURE STATEMENT OR THE PLAN, NOR DOES IT CONSTITUTE AN ENDORSEMENT OF THE PLAN ITSELF.

## III.

### BACKGROUND INFORMATION ON DEBTOR AND THE PLAN
### AND THE NATURE AND HISTORY OF THE DEBTOR

A. <u>Financial History and Background of the DEBTOR.</u>

Debtor is principally engaged in the business of leasing real property.

B.   Operations in Chapter 11.

After the filing of the Voluntary Petition, the Debtor have continued to operate the Debtor's business.   The Debtor have continued to pay all obligations on post-petition debts while under protection of the Bankruptcy Code and have paid all normal operating business expenses.

There are not copies of the Debtor's most current Monthly Operating Reports because the Debtor has not been receiving any rental income from the tenant.

The Debtor has continued to remain current on its post-petition tax liability and make agreed upon cash collateral payments, if any.

C.   Future Income and Expenses Under the Plan.

Future income and expenses under the Plan are irrelevant. Currently, the Debtor has received permission from this Court to sell the real property free and clear of all liens, claims and encumbrances.   Currently, that matter is before the title company, but as of this date, the closing has not occurred.

D.   Anticipated Future of Debtor.

It is not anticipated that the Debtor will not have a future inasmuch as when the matter is closed and the property is sold, the Debtor will seek a dismissal of this bankruptcy case.

15

After the confirmation of the Plan, the following persons shall serve in the key management positions reflected herein:

| Name | Title |
|------|-------|
| PORIA MIANABI | Managing Member |

E.   Accounting Method and Source of Financial Information

The accounting method used by the Debtor is the cash method. The source of the financial information is the Debtor's business records and the Monthly Operations Reports. NOT ALL OF THE INFORMATION CONTAINED HEREIN HAS BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH COMPLETE ACCURACY, THE PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. CLAIMANTS AND INTEREST HOLDERS ARE URGED TO REVIEW IN FULL THE PLAN AND THIS DISCLOSURE STATEMENT TOGETHER WITH ALL EXHIBITS ATTACHED THERETO PRIOR TO VOTING ON THE PLAN AND ARE URGED TO CONSULT LEGAL COUNSEL TO ENSURE COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

## IV.

## ANALYSIS AND VALUATION OF PROPERTY

A.  Schedule of Assets and Market Value

The Debtor owns real property described as 1.247538 Acre track of land situated in Guadalupe County, Texas.  It's value is $4,275,000.00 and has a claim against it in the approximate amount of $3,100,000.00 plus accrued interest.

The values and debts reflected below indicate any increases or decreases in the value of the property or corresponding debt since the Debtor filed for protection under Chapter 11 of the Bankruptcy Code on July 30, 2021.  If any of the debts have remained the same, it is because the Debtor were paying interest only with no principal reduction; or, in the alternative, if there is any increase in debt; it is because the Debtor incorrectly stated the amount of debt in their original Bankruptcy Schedules.

All valuations on the above mentioned property are values placed on the same by the Debtor in Possession as of this time.

**Exempt Property**

**NONE**

B. Liquidation Analysis

If this case were converted to a Chapter 7 proceeding and all of the operations were ceased, under a Chapter 7 liquidation, the

17

creditors would only receive the liquidation value of Debtor's assets. The Debtor's liquidation analysis is not attached hereto inasmuch as this is a single asset case and the value of $4,275,000.00 far exceeds the debt plus interest of $3,100,000.00.

**V.**

SUMMARY OF PLAN OF REORGANIZATION

The Plan will be provided upon request to all creditors or possible creditors and all interest holders known to the Debtor. The Plan should be read carefully and independently of this Disclosure Statement. The following summary is not intended as a substitute for reading the Plan.

The Plan is simple in concept. Basically, it contemplates distributions from the proceeds from the Debtor's future business.

A. Summary of Classes and Estimation of Administrative Claims and Scheduled Claims

Class 1: Secured claim of the following:

Shirazi, LLC. $3,100,000.00

**Total: $3,100,000.00**

Class 2: Secured Claim of the following:

Guadalupe County Tax Assessor/Collector $68,838.50
P.O. Box 2903
San Antonio, TX 78299-2903

**TOTAL: $38,838.50**

18

**Class 3**:  The Debtor, ALAMO CITY MOTORPLEX, LLC.

B.    **Provision for Treatment of Classes of Creditors**

The actual and necessary costs and expenses of administration of, and claims against, Debtor's entitled to priority in accordance with §503(b) and §507(a)(1) of the Bankruptcy Code are not impaired.  The holder of any Allowed Administrative Claim, except as otherwise provided in the Plan, shall be paid in full, without interest, in cash, on the effective date of the Plan, from estate funds or upon such other terms as may be agreed upon between the holder of any such claim and the Debtor.  Such payment will include payment of all expenses incurred by the Debtor in the operation of the estates since the date of filing of this cases, together with authorized and allowed fees and expenses of professionals employed by the Debtor including attorneys, accountants and appraisers.

**Class 1**:  The Class 1 Creditors, to the extent that their claims are allowed, shall be paid as follows: The total amount owed to the Class 1 Creditor shall be paid in full at closing regarding the sell of this real estate.

**Class 2**:  The Class 2 Creditors, to the extent that their claims are allowed, shall be paid as follows: Shall be paid 100% of their claim at closing on the sell of this real estate.

19

C.   Operation of the Plan

1.   Feasibility of the Plan

Several factors can be considered to determine whether the Plan is feasible, including:

1. Will the plan reorganize the Debtor's financial structure in such a way that the reorganized Debtor will be able to generate necessary cash flow?

2. Will the reorganized Debtor be solvent? Will he be able to meet his fixed and contingent payment obligations provided for under the Plan as well as obligations incurred in the ordinary course of business, both from a cash flow and an accounting standpoint? Will its solvency be based only on the use of quasi-organization accounting rather than inherent asset values?

3. Does the reorganized business activity have a reasonable likelihood to operate profitably in the future? Will its cash flow be sufficient?

4. Is the Debtor sufficiently qualified to handle the operational, financial and other problems likely to be encountered?

The Debtor in this case would disclose the following:

1. The Debtor will not be generating any income other than from the operation of the business.

2. The Debtor does anticipate that to realize sufficient income to pay all claims pursuant to the terms of the plan.

3. It is anticipated that the cash flow from the operation of his businesses will be sufficient to meet all the fixed and contingent obligations for the Debtor under the Plan as well as those incurred in the ordinary course of business.

4. The Debtor is sufficiently qualified to handle the operational, financial and other problems likely to be encountered.

Risks Associated with the Plan

There is a risk, though not anticipated, that the Debtor will not be able to generate sufficient cash flow to satisfy the terms of the Plan. Notwithstanding that, the Debtor has an excellent reputation in the business community and expects to be able to operate his businesses profitably to pay the claims pursuant to the terms of the plan.

2.  Retention of Jurisdiction

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until final allowance or disallowance of all claims, or to resolve all controversies affected by this Plan in respect to the following matters:

A.  To enable the Debtor or re-vested Debtor to consummate in cash and/or undivided interests in the property any and all proceedings which it may bring prior to or subsequent to entry of

21

the Order of Confirmation, to avoid or set aside the Order of Confirmation, or to avoid or set aside liens or encumbrances, to object to claims or the allowance thereof, or to hear and determine pending litigation in the Court, or preference litigation, or to recover any transfers, assets or damages to which the Debtor may be entitled under the applicable provisions of the Bankruptcy Code or other federal, State or local law; and to hear and determine all related litigation, contested matters or adversary proceedings pending on Confirmation Date or properly and timely filed in the Court thereafter;

B.    To classify, allow or disallow claims, and direct distributions of funds from the Bankruptcy Estate of ALAMO CITY MOTORPLEX, LLC adjudicate all controversies concerning the classification or allowance of any claim or security interest against the property of the estate;

C.    To enforce the payment and performance of the Plan against the re-vested Debtor or against the creditors (whether or not filing or holding claims against the Debtor) or any party in interest;

D.    To hear and determine all claims arising from the rejection of executory contracts or leases, and to consummate the rejection and termination thereof or application for determination, rejection or termination thereof having been filed prior to the entry of the Order of Confirmation, or filed in

22

compliance with the Plan thereafter;

E.    To liquidate damages in connection with any disputed, contingent or otherwise unliquidated claim as provided in the Plan or as provided in the Bankruptcy Code;

F.    To adjudicate all claims to a security or ownership interest in any property of the estate or in proceeds thereof;

G.    To adjudicate all claims or controversies arising out of any purchases, sales, transactions or conveyances undertaken by the Trustee during the pendency of the proceedings or any creditors after the Confirmation Date;

H.    To recover all assets and properties comprising property of the estate of the Debtor pledged to secure payment under this Plan, wherever located;

I.    To hear and determine matters concerning State, local and federal taxes or priority tax claims pursuant to §§§ 505, 525 and 1146 of the Bankruptcy Code or otherwise;

J.    To hear and determine matters or controversies relating to the Debtor or re-vested Debtor or any attorneys or professionals retained on behalf of the Debtor after the Confirmation Date; and

K.    To make, hear and determine such matters and such Orders as are necessary and appropriate to carry out the provisions of this Plan.

23

3.    Modification of Plan

The Debtor may propose amendments or modifications to the Plan and exhibits or the exhibits incorporated in this Plan and attached to the Approved Disclosure Statement of the Court at any hearing on or before the Order Confirming the Plan, with leave of the Court and upon notice to creditors or parties as is deemed necessary by the Court. Either prior to or after the date of the Final Order approving the Approved Disclosure Statement, any modification is subject to approval of the Court, and so long as the proposed modification to the Plan or exhibits to the Plan or Approved Disclosure Statement do not materially or adversely affect any Class of Creditors, or is made to remedy any defects, omissions or reconcile any inconsistencies in the Plan or Order Confirming the Plan in such a manner as may be necessary to carry out the purpose and intent of this Plan or any Class of creditor(s) affected by the modification consent in writing, the Court shall approve such Modification.

4.    General Information about the Claims Procedure and Procedures for Resolving Contested Claims

The Debtor, re-vested Debtor or any party in interest may file with the Bankruptcy Court an objection to the proof of claim filed by any party or claimant. Any objection must be in writing, must set out the name of the creditor or interest holder who filed the claim (and any assignee), the dollar amount of the

claim and the character of the claim. Each specific ground for objection or defense to, the claim shall be listed in a separate paragraph. Service of the objection shall be made upon the attorney of record for the claimant (or the creditor or interest holder directly if not represented by an attorney), by serving a true and correct copy of the objection and shall be deemed complete upon mailing as set out in Bankruptcy Rule 9006(e). A certificate of service shall promptly be attached to each objection and shall comply with local Bankruptcy Rule 9013(f).

If an objection to a claim is filed, the creditor shall file a response to any such objection within twenty (20) days from the mailing date set out in the certificate of service for the objection. Responses may take one of two forms, namely, a consent to the objection, or a non-consenting response. A non-consenting response shall state specific reasons for objection to each ground or defense, shall list the names and addresses of any and all witnesses to be called in support of the response, and shall include copies of all documents (including invoices, security documents and the like) relied upon by the non-consenting party to support allowance of the claim or interest. Copies of such responses shall be served upon the Debtor, and attorneys for the Debtor. Failure to timely file a response shall result in a deemed consent to the objection, and upon the

expiration of the 20-day period, the Court may enter an order without further notice of hearing. In the event a timely non-consenting response is filed, the Court shall set a hearing on not less than thirty (30) days notice to the parties in accordance with Bankruptcy Rule 3007.

    5.   Debtor's Retention of Interest

Debtor shall retain its ownership interest under this Plan.

**VI.**

ALTERNATIVES TO THE PLAN

Although this Disclosure Statement is intended to provide information to assist in the formation of the judgment as to whether to vote for or against the Plan and although creditors are not being offered through that vote an opportunity to express an opinion concerning alternatives to the Plan, a brief discussion of alternatives to the Plan may be useful. These alternatives include continuation of the Chapter 11 case, conversion to Chapter 7 for liquidation, or dismissal of the proceedings. The Debtor, of course, believes the Plan to be in the best interest of creditors, other interest holders and the Debtor. Thus, the Debtor do not favor any alternative to the proposed plan.

    1.   If this Chapter 11 proceeding continues without a confirmed Plan, there would be further delay in payments to Creditors.

26

2.    The Debtor believes that a liquidation under Chapter 7 would not be in the best interests of all parties.  As discussed above, the Creditors would receive less than what is contemplated by the Debtor's Plan.

3.    If this case were dismissed, the rights of all creditors would be prejudiced.  The creditors who were able to obtain State Court remedies against the Debtor first would have an advantage over other creditors.  The dismissal would also create a large amount of litigation.

## VII.

### RISKS TO CREDITORS UNDER PLAN

In the future, if the Debtor cannot substantially consummate the provisions of the Plan, the Debtor may have to cease all operations and, as a result, the Creditors would receive a very small dividend, if any, in the case.

## VIII.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The implementation of the Plan will have significant federal income tax consequences with respect to the Creditors and the Debtor.  The following discussion summarizes such federal income tax consequences based upon the Internal Revenue Code of 1986, as amended (the "Tax Code") and the Treasury Regulations promulgated thereunder.

27

The Plan and its related tax consequences are complex. Treasury Regulations have not yet been promulgated with respect to many of the substantive provisions of the Tax Code that have been amended by legislation in recent years. The Debtor have not requested a ruling from the Internal Revenue Service, nor has it obtained an opinion of counsel. Accordingly, no assurance can be given as to the interpretation that the Internal Revenue Service will adopt. Further, the federal income tax consequences to any particular creditor and the Debtor may be affected by matters not discussed below. There also may be State or local tax considerations applicable to each creditor. THE DISCUSSION SET FORTH BELOW IS INCLUDED FOR GENERAL INFORMATION ONLY. BECAUSE THE TAX CONSEQUENCES OF THE PLAN MAY VARY DEPENDING UPON INDIVIDUAL CIRCUMSTANCES, EACH CREDITOR AND INVESTOR IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN UNDER APPLICABLE FEDERAL, STATE, AND LOCAL TAX LAWS.

A.   Federal Income Tax Consequences to Creditors

The federal income tax consequences of the implementation of the Plan to a creditor will depend in part on whether, for federal income tax purposes, the obligation from which a Creditor's claim arose constitutes a "security." The determination as to whether an obligation from which a creditor's claim arose constitutes a "security" for federal income tax purposes is complex. It depends on the facts and circumstances

surrounding the origin and nature of the obligation. Generally, corporate debt obligations evidenced by written instruments with original maturities of ten years or more constitutes "securities." Although it appears that some of the creditors' claims do not constitute "securities," the Debtor express no views with respect to whether the obligation from which a particular creditor's claim arose constitutes a "security" for federal income tax purposes. Creditors are urged to consult their own tax advisors in this regard.

Exchanges by creditors, whose claims arise from obligations that do not constitute "securities," or whose claims are for wages or services, will be fully taxable exchanges for federal income tax purposes. Such creditors who receive solely cash in discharge of their claims, will recognize gain or loss, as the case may be, equal to the difference between (i) the amount realized by the creditor in respect of its claim (other than any claim for accrued interest) and (ii) the creditor's tax basis in its claim (other than any claim for accrued interest). For federal income tax purposes, the "amount realized" by a creditor who receives solely cash in discharge of its claim will be the amount of cash received by such creditor.

Where gain or loss is recognized by a creditor, the character of such gain or loss as a long-term or short-term

29

capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which a claim arose has been held for more than six months, and whether and to what extent the creditor has previously claimed a bad debt deduction. The capital gains deduction for individuals and the alternate tax for corporate net capital gain has been repealed and capital gain is currently taxed to individuals and corporations at their respective maximum tax rates. However, the definitions of long-term and short-term capital gain or loss have not been repealed.

To the extent any amount received (whether cash or other property) by a creditor is received in discharge of interest accrued on its claim during its holding period, such amount will be taxable to the creditor as interest income (if not previously included in the creditor's gross income). Conversely, a creditor will recognize a deductible loss (or, possibly, a write-off against a reserve for bad debts) to the extent any interest accrued on its claim was previously included in the creditor's gross income and is not paid in full.

**IX.**

Pending Litigation, Actions Pertaining to Fraudulent

Transfers, Voidable Preferences and Equitable Subordination

All claims for return of preference payments or for fraudulent transfers pursuant to §§ 547, 548, 549 of the Code,

30

all claims relating to post-petition transactions under § 549 of the Code, all claims recoverable under §550 of the Code, all claims existing against the Debtor, whether past or present, all claims against third parties on account of indebtedness, and all other claims of the Debtor, to the extent not specifically compromised and released pursuant to the Plan, and hereby preserved and retained for the enforcement by the Debtor subsequent to the Effective Date. No claims of the Debtor shall be waived, compromised, settled, relieved, or relinquished solely as a result of Plan confirmation.

Pursuant to the Bankruptcy Code, a Debtor may recover certain preferential transfers of property, including cash made while insolvent during the ninety (90) days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts to the extent the transferee received more than it would have in respect of the pre-existing debt, had the Debtor been liquidated under Chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for a one year preference period. The term "insiders" is defined in the Bankruptcy Code. There are certain defenses to such recoveries. Some include a transfer made in the ordinary course of the Debtor and the transferee's business according to the ordinary business terms are not recoverable and if a transfer is received by the

Debtor, the transferee has a general unsecured claim against the Debtor to the extent of the recovery.

**X.**

<u>SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE</u>

The Debtor has been allowed via order of this Court to sell its single asset free and clear of all liens, claims and encumbrances (Docket Text No. 23).

<u>CONCLUSION</u>

The materials provided in this Disclosure Statement are intended to assist you in voting for the Plan of Reorganization in an informed manner.  If the Plan is confirmed, you will be bound by its terms.  You are urged to review this material and make such further inquiries as you may deem appropriate and then cast an informed vote on the Plan.  The Debtor believes that a reorganization of the Debtor pursuant to the Debtor's Plan will provide an opportunity for creditors to receive more than would be received by liquidation of assets under Chapter 7 of the Code. Accordingly, the Debtor urges you to vote in favor of the Plan if this Disclosure Statement is approved.

RESPECTFULLY SUBMITTED this 28TH day of OCTOBER, 2021.


BY:  /s/Poria Mianabi
PORIA MIANABI, Managing Member of
the DEBTOR-IN-POSSESSION




APPROVED AS TO FORM:

JAMES S. WILKINS, P.C.
1100 NW Loop 410, Suite 700
San Antonio, TX 78213
(210) 271-9212  (Telephone)
(210) 271-9389  (Facsimile)
TBC NO. 21486500



/s/James S. Wilkins
BY:  JAMES S. WILKINS
     Attorney for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing <u>Disclosure Statement</u> has been sent to the following by first class U.S. mail, on this 28th day of OCTOBER, 2021:

    United States Trustee
    615 E. Houston Street, Suite 533
    San Antonio, TX 78205


                              /s/James S. Wilkins
                              JAMES S. WILKINS
                              Attorney for Debtor